**GREGORY T. MURPHY**
California State Bar No. 245505
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: gregory_murphy@fd.org

Attorneys for Bruce Robert Massey

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY ALAN BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 07CR2911-LAB |
| Plaintiff, | |
| v. | **SENTENCING MEMORANDUM** |
| BRUCE ROBERT MASSEY, | |
| Defendant. | |

Bruce Robert Massey, through undersigned counsel, submits the following memorandum in support of his request for a probationary sentence. A sentence of five years of probation will impose a significant penalty, while also recognizing and addressing his tragic past and debilitating mental illness.

## I.

### INDIVIDUAL BEFORE THE COURT

Bruce Robert Massey is 53 years old. This is his first felony conviction, and his first conviction of any sort since 1984.

Mr. Massey's lack of criminal history belies his violent childhood. Page 5 of the Presentence Report details the extensive physical and sexual abuse he endured as a child.

Mr. Massey also is mentally ill, a condition he has come to understand--and for which he has received treatment--late in life.[1] He was evaluated for the first time in July 2006, when he and his then wife

---

[1] The psychiatric records referenced here are attached in chronological order as Exhibit A. They have been shared with government counsel.

visited the Imperial County Behavioral Health Services center. Mr. Massey complained of delusions, grandiosity, paranoia, mood swings, poor concentration, disorganization, and difficulty remembering. He reported that he had been suffering these symptoms for years, and that they had cost him his first marriage and made it difficult for him to maintain employment.

Dr. Bushra Ahmad, the physician who evaluated Mr. Massey, noticed that he was wringing his hands compulsively throughout their interview. She diagnosed him with mixed manic depressive psychosis, prolonged posttraumatic stress disorder, and "unspecified" alcohol abuse. She also concluded Mr. Massey suffered from an unknown and undiagnosed mental disease. As a result, Dr. Ahmad prescribed two drugs for bi-polar disorder: Seroquel and Lamictal.

By the time Mr. Massey returned the following month, the medications had already begun to improve his quality of life. Dr. Ahmad's August 2006 report indicates that Mr. Massey's mood swings and sleep had improved, but that he continued to struggle with his memory. Evaluations in October and November 2006, and in January 2007 demonstrated that Mr. Massey's mental condition was steadily improving.

The long fall that culminated in Mr. Massey's arrest for this offense began in February 2007. In January 2007, due to administrative error, Mr. Massey did not receive an SSI check. He did not receive a check the following month either. On February 5, 2007, Mr. Massey reported to his psychiatrist that he was running out of medication and could not afford to buy more.[2] By March, as he continued to await his SSI payments and began to experience withdrawal from his medication, Mr. Massey described feeling out of body. By June, he had lost his apartment for failure to pay rent. Dr. Ahmad's notes for that month indicate that he "can't make reasonable and meaningful conversation." On September 17, 2007, three days before his arrest, Dr. Ahmad's report states: "not doing too good...Still has problem with his medical, has to buy meds, but his girlfriend gives him meds."

As Dr. Ahmad's reports chronicle, Mr. Massey's mental condition deteriorated spectacularly after he lost the ability to pay for his psychiatric medication.[3] Indeed, he ended up far worse than he ever had been

---

[2] Mr. Massey's second marriage also ended in February 2007. His wife also suffered from mental illness. Financial pressures also drove the couple apart.

[3] Magistrate Judge Lewis saw first hand the effects on Mr. Massey of being deprived of his medication. In the four days he was in custody after his arrest, Mr. Massey's condition deteriorated from anxious to tortured. Recognizing this, Judge Lewis modified his bond to

before receiving treatment. Although Mr. Massey previously had struggled to maintain work and relationship, he had never before been involved in serious criminality. He had raised a child and maintained a marriage for twenty-four years. [PSR, pp 5-6.] By contrast, in the time he was without regular medication between February and September 2007, Mr. Massey's mental illness cost him his home, his marriage, and ultimately his freedom.

Mr. Massey is currently receiving treatment again. From his present perspective, he can identify his prior irrational and self-destructive conduct. [PSR, p.6.] Mr. Massey expressed to the probation officer that his is "torn up" about his decision to drive marijuana into the United States. [PSR, p.3.] He is determined not to reoffend.

## II.

## SENTENCING REQUEST UNDER 3553(A)

**A.   The Sentencing Range Established For The Applicable Category Of Offense And Defendant As Set Forth In The Advisory Guidelines.**

    **1.   The Offense Level Is Twenty-Two.**

Mr. Massey has pleaded guilty to importing approximately 76.94 kilograms of marijuana. Pursuant to U.S.S.G. § 2D1.1(c)(11), the base offense level is twenty-two.

    **2.   A Two (2) Level Reduction Is Warranted under the "Safety Valve" provisions of U.S.S.G. § 5C1.2 and 2D1.1(b)(9)**

As noted in the Government's sentencing summary chart, Mr. Massey has met the criteria of U.S.S.G. § 5C1.2 and 2D1.1(b)(9). He therefore qualifies for a two level reduction for Safety Valve.[4]

    **3.   A Two Level Reduction Is Warranted for Mr. Massey's Minor Role in the     Offense**

All parties agree Mr. Massey was a minor participant in this offense and a two level downward role adjustment is appropriate. In particular, Mr. Massey's minor role was discussed in detail during his safety valve debrief.

---

permit him to be released on his own signature. Mr. Massey has, of course, complied with all the terms of his pretrial release.

[4]The government's sentencing summary chart was filed after the Probation Officer's report. Accordingly, the PSR states that Mr. Massety does not qualify for safety valve.

**4.    A Three Level Reduction Is Warranted for Acceptance of Responsibility.**

The Government has moved the Court to grant Mr. Massey a third point for acceptance of responsibility. He asks the Court to grant the Government's motion.

**5.    The Court should depart three levels pursuant to either 5K2.13, Diminished Capacity, or for a combination of factors.**

U.S.S.G. 5K2.13 provides that:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect to the extent to which the reduced mental capacity contributed to the commission of the offense.

Here, the uncontroverted evidence before the Court is that Mr. Massey's mental health had deteriorated dramatically since February 2007, when he lost the ability to pay for his medication. Only three days before his arrest, Mr. Massey's psychiatrist noted that he was "not doing too good" and that he had problems with mood swings, disorganization, poor memory and poor decision making. It is therefore clear that Mr. Massey was suffering a "significantly reduced mental capacity" at the time of his offense. Moreover, given the absence of any significant criminal history in the prior 52 years, Mr. Massey's mental health status plainly contributed substantially to his poor decision to accept money for importing marijuana.

More generally, when unmedicated, Mr. Massey's mental illness reduces his ability to make reasoned decisions, and thus reduces his moral culpability for this crime. See Caro v. Woodford, 280 F.3d 1247, 1258 (9th Cir. 2002) ("[M]ore than any other singular factor, mental defects have been respected as a reason for leniency in our criminal justice system"); Karis v. Calderon, 283 F.3d 1117, 1134 (9th Cir. 2002)( "There is a belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional and mental problems, may be less culpable than defendants who have no such excuse.").

Furthermore, as detailed on pages 5 of the Presentence Report, Mr. Massey's personal history is uniquely tragic. His childhood was marked by unimaginable violence. As an adult, his mental illness has cost him his few relationships. To his credit, Mr. Massey largely has managed to overcome these obstacles, to live a productive and law abiding life, and to forge meaningful relationships with people who care about him.

The challenges posed by Mr. Massey's mental illness and violent past both call for compassion and offer reasons for optimism. Because his criminality derives from a treatable illness, the Court can use this opportunity to be ensure that Mr. Massey continues to receive needed medical care. The Court also can offer services to help Mr. Massey begin--in mid-life--to heal from the ordeal of his childhood.

### 6. The Court Should Depart Two Levels Pursuant to U.S.S.G. § 5K3.1.

Pursuant to this district's "Fast Track" early disposition program, Ms. Massey pleaded guilty at the first opportunity and promptly stipulated to the release of the Material Witnesses. A further two level departure pursuant to § 5K3.1, therefore, is warranted.

### 7. Advisory Guideline Calculations.

The attached sentencing summary chart contains Mr. Massey's recommended guideline calculations.

## B. The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Massey.

As noted above, Mr. Massey played a comparatively minor role in this offense, serving as a credulous and expendable courier for a larger drug smuggling organization. His history and circumstances make plain that mental health treatment and counseling will prevent future criminality.

## C. Imposition of a Sentence That Is Sufficient, But Not Greater Than Necessary, To Comply With The Purposes and Factors of § 3553(a).

18 U.S.C. § 3553(a) states that the Court shall impose a sentence sufficient, though not greater than necessary, to comply with purposes of sentencing set forth in subsection 2.

### 1. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

The Sentencing Reform Act stresses "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). This provision recognizes that while a felony conviction and a period of incarceration can productively impress on a non-serious first offender the gravity of his actions, extended incarceration can be counterproductive, reducing the first-time offender's future chances of success.

/ / /

1    In this case, a custodial sentence would be unjust. Mr. Massey is not a high ranking member of a drug smuggling cartel. Rather, his crime reflects the unreasoned actions of a desperate man suffering from debilitating mental illness. For Mr. Massey specifically, five years probation fully promotes respect for the law and recognizes the seriousness of his crime. See Gall v. United States, 128 S. Ct. 586, 600 (2007) ("A sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.").

**2.      The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

Mr. Massey poses no threat to the public. Continued mental health treatment will most effectively prevent future criminality.

**3.      The Kinds of Sentences Available.**

Mr. Massey is an excellent candidate for a probationary sentence. As a United States citizen, he is eligible to take advantage of the many treatment programs offered by United States Probation. A probationary sentence will permit Mr. Massey to continue receiving needed medical care, while also . Given the depth of his fall, this transition is crucial to his long term success.

**4.      The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

In Gall, the Supreme Court held that this Court's sentence must be based both on avoiding unwarranted sentencing disparities among similarly situated defendants and protecting against unwarranted sentencing similarities between differently situated defendants. Gall, 128 S. Ct. at 600. As expressed at 8 U.S.C. § 3553(a), the avoidance of sentencing disparity, while important, is not the only--or the overriding--goal of criminal sentencing.

Here, the standard guideline based sentence recommended by the Government in this case fails to recognize the significant mitigating factors in Ms. Massey's case, as well as the likelihood that psychological counseling and treatment will prevent future criminality. Accordingly, he asks the Court to sentence him to a custodial period of time served, followed by five years of probation.

///

## III.

## CONCLUSION

For the foregoing reasons, Mr. Massey asks the Court to sentence him to a period of probation.

Respectfully submitted,

DATED: April 9, 2008

*Gregory T. Murphy*
**GREGORY T. MURPHY**
Federal Defenders of San Diego, Inc.
Attorneys for Bruce Robert Massey